## Kerr *against* Gilmore.

The execution and delivery of a deed of conveyance of land, and at the same date, the execution and delivery of a defeasance by the grantee, shall be construed to be a mortgage; and upon the trial of an ejectment for the land, it is not competent for the grantee to prove that the conveyance was executed and delivered before the defeasance, which was a subsequent and independent agreement; and that the transaction was intended by the parties to be an absolute sale, if the consideration money were not repaid within the time specified.

ERROR to the district court of *Allegheny* county.

Ejectment by James Kerr against William Gilmore and others.

The plaintiffs below, Joseph Gilmore and Joseph Figley, claimed three-eighth parts of a tract of land, admitted to have, at one time, been the property of John Gilmore, deceased. The parts in dispute became vested in Joseph and Benjamin Gilmore, by descent and by purchase of one-eighth. Joseph and Benjamin Gilmore, together with the widow of John Gilmore, deceased, on the 8th of June 1827, conveyed three-eighths of the whole tract by deed, with special, and also with general warranty to James Kerr, in consideration of the said 430 dollars. The wives of the grantors did not join in this deed, nor were they mentioned in it. The witnesses to this deed, were J. Craighead and A. Craighead. Plaintiffs also gave in evidence, a paper as follows: whereas, I, James Kerr of the township of Elizabeth, in the county of Allegheny, have this day purchased of Ann Armstrong, Benjamin Gilmore and Joseph Gilmore, three-eighths of one hundred and forty-seven and a half acres of land, which descended to them by the death of John Gilmore, former husband of said Ann Armstrong, and father of Benjamin and Joseph, for the consideration of 430 dollars. Now, provided the aforesaid Armstrong and Gilmores do refund me my money with interest, and pay me for all trouble and expense I may be at, respecting said land, within one year from this date, then, and in that case, I obligate myself to convey back the said three-eighths of said land, unto the said Gilmores, and for the true performance of the same, I bind myself, my heirs, executors and administrators; as witness my hand and seal the 8th of June, 1827.

          (Signed)          JAMES KERR, [L. S.]

Test.—J. Craighead, A. Craighead.

The plaintiffs also showed conveyances in 1835 and 1836, from Joseph and from Benjamin Gilmore to them. They called witnesses as to the value of the land, and proved a tender of the money to defendant and his refusal.

Defendant then called J. Craighead, Esq., who testified; I know the land, though not particularly acquainted with the soil. On the

deed being shown to him, he said, this deed was executed before me; it was written by Joseph Vankirk.   The parties came before me to execute and acknowledge it.   The defeasance shown to the witness, who says, " this is my writing."

The defendants offer to prove by this witness, what occurred at the time of the execution of the deed; that the same was executed before the paper, purporting to be a defeasance, was written; that after the execution of the deed, some one of the parties suggested that it would be a benefit to have the privilege of repurchasing the land; that they agreed they should have one year to repurchase the same; that witness put the agreement in writing; that nothing of this kind was said until after the deed had been executed; that all parties spoke of it as a sale to the defendant; that previous to the sale to defendant, the Gilmores had offered to sell to others; that they were anxious to sell, and had offered the land for a less price than defendant paid for it; that defendant was not in the habit of lending money, and that the price paid was equal to the value of the land.

To all this the plaintiff objected, that the testimony was irrelevant and tended to contradict the written contract of the parties. The court overruled the testimony, and sealed a bill of exceptions.

There was other testimony; value of land was proved to be about 10 dollars per acre; and certain instruments of writing, being releases or confirmations, but not so specific as to be easily designated as to its object or effect.   The charge of the court (Grier, president) was in favour of the plaintiff; that the deed and defeasance of the same date constituted a mortgage.

The only error assigned, was the rejection of the testimony above stated.

*Shaler*, for plaintiff in error, cited 2 *Ball & Beatty* 274; 2 *Edwards's Rep.* 138; 7 *Cranch* 218; 2 *Call* 428; *J. J. Marshell* 114; 1 *A. R. Marshell* 170, 178.

*Veech* and *Forward*, for defendants in error, cited 3 *Watts* 188.

The opinion of the Court was delivered by

Huston, J.—Originally, it would seem that what are now called mortgages, whether contained in one instrument, or divided into an absolute deed and a defeasance on a separate paper, were considered at common law as sales on condition, and if the condition was not performed at the day, the estate became absolute, and could never be recovered; payment or tender afterwards were equally unavailing; and perhaps we may suppose this was the intention of one party, and the terms submitted to by the other under the infatuation which seems at all times to have cheered the heart of the debtor with a hope that he would soon be able to pay. It is unnecessary to inquire at what time, and by what gradations,

[Kerr v. Gilmore.]

courts of chancery took cognizance of, and relieved the debtor from the contracts which were often ruinously hard. The courts of law at length took notice that mortgages were only securities for money. "The case of mortgages," says Chancellor Kent, "is one of the most splendid instances, in the history of our jurisprudence, of the triumph of equitable principles over technical rules, and the homage which those principles have received by their adoption in courts of law." 4 *Kent's Com.* 158, 2d ed.; see also *Story's Eq. tit. Mortgages, vol.* 2, 270; *et seq.* The books just cited, will refer the reader to most of the cases. The result seems to be, in the opinion of those distinguished writers, the same which this court had early arrived at, and uniformly adhered to, as the true criterion of whether a paper, or two or more papers, amounted to an absolute sale, or to a loan of money and a pledge of land, to secure the repayment. 1 *Yeates* 379; 5 *Binn.* 499; 9 *Serg. & Rawle* 432; 3 *Watts.*

The result of these cases seems to be, that, if the agreement is in substance a loan of money, no management or contrivance of the lender; no form of expression in the instruments; not even dating the defeasance several days after the deed; not even the lender uniformly stating that he will not have a mortgage, will avail. A sale in form, but which, in fact and substance, may be avoided, by the payment of money within a given time, is, and will be held to be a mortgage; if a mortgage until that period elapses, it must continue a mortgage, until lapse of time or some other matter changes it.

In different cases, we find different particulars stated, as being *criteria* by which to distinguish, whether the instrument be a mortgage, or an absolute sale. Each of these may have weight, but it is not safe to designate the insertion or omission of any one clause or circumstance as conclusive, for that would be adopted by the rapacious, and submitted to by the needy, and the wholesome rules now established would become useless. The cases, however, seem to admit the possibility of a deed absolute on its face, and a defeasant's agreeing to reconvey if the money be paid on a certain time, and that the latter may be unavailing, unless the money be paid at the time specified. This, however, can, as I apprehend, only occur, where the contract and conveyance were clearly for an absolute sale, and the agreement to reconvey a subsequent and distinct matter, not in the contemplation of the parties when the sale was made, and deed delivered. In such case, the agreement to reconvey will amount only to an executory agreement to sell, on which the covenantee may have an action.

The authorities, however, say, that even when the matter assumes this appearance, the courts are bound to scrutinize the transaction with great care, and to be watchful that it was not originally a loan of money; and when we consider, that many of those who lend are astute to devise some mode by which to become

[Kerr v. Gilmore.]

absolute owners, if the money be not repaid at the day, this caution would seem to be necessary.

The offer in the present case, assumes the appearance of making the agreement to reconvey, a new and distinct matter, not contemplated, until after a sale had been agreed on and completed. It is now contended, that the testimony ought to have been heard, and the matter on the evidence left to the jury to decide, whether, under all the evidence, and the fair inferences from it, this transaction was in substance an agreement to advance money on an absolute deed, with an agreement that Gilmores were to have the land back on repaying the money within a year; and if so, the writings and agreement were in law and equity only a mortgage, and this, although both parties had agreed that the deed should be absolute, unless the money was repaid within a year; but that on the other hand, if the transaction was a *bona fide* sale, at first, and so completed by payment of the money, and execution, and delivery of the deed; and that after this was done, and without any previous understanding or agreement, a new contract was made, by which Kerr agreed to reconvey on the terms specified, then the deeds do not amount to a mortgage, but the one is an absolute deed of bargain and sale, and the other only an executory agreement to convey on certain terms therein specified.

All the cases show, that all the circumstances of the whole transaction are inquired into, in chancery, and in our own courts; and all the cases show, that an absolute sale and defeasance contained in the same instrument, must be a mortgage, and nothing but a mortgage. It is well settled, that the making two instruments, a deed and a defeasance, at the same time, of the same date, leaves it still a mortgage, precisely, as if both were in the same instrument.

If, however, we should once admit, that, to make a sale absolute, and the land irredeemable, unless the money be repaid at the day, nothing more was necessary than to tell the scrivener to write a deed of conveyance, and insert a certain sum as the consideration; and this deed being executed, to then tell him to draw a defeasance by which the deed was to be void, or a reconveyance be made, if the money, and interest, and expenses were repaid at a given day, we should break down the system so well established, and open the door to every money lender, who was disposed to take advantage of the needy borrower. I repeat, that almost every person who borrows, feels a hope, however unfounded, that he will, with the aid of a little money, be able to retrieve his affairs, and repay at a precise time. The advantage taken of those in distress, and who are under this infatuation, induced courts and legislatures to interfere; and long and uniform experience has sanctioned the interference, and established the law as above stated; so that it has become impossible to draw any conveyance, nay, to make any contract, by which property shall

[Kerr v. Gilmore.]

be redeemable for a certain period, and cease to be so after that period has elapsed. The proof was full, that such was the agreement of both parties, in Woods *v.* Colwell, 3 *Watts.* Yet on full consideration, the two instruments, though the defeasance purported to be executed two days after the conveyance, was held to amount only to a mortgage; here the deed and defeasance were executed on the same day and hour, before the same witnesses, without the parties having separated. If a case can occur, where such conveyance and defeasance do not constitute a mortgage, it must be one in which some time has elapsed, some circumstances have occurred to satisfy the court and jury, that the contracts were really separate, that the first was always intended as a real actual sale, and the second bargain a real and distinct agreement to purchase again, property which had once been actually sold, but the two bargains cannot be made in the same hour or day, nor evidenced by instruments executed as these were, before the parties separated, and before the witnesses to the first instrument left the room, or any new information had been communicated. Where the deed and defeasance are of separate and different dates, they may amount to a mortgage and nothing more. Where they are of the same date, and executed at the same meeting of the parties, before the same witnesses, they must be a mortgage, and only a mortgage, or there will be no more mortgages.

It is not error to reject that, which clearly cannot avail the party if proved.

KENNEDY, J.—Mr Butler, *Co. Lit.* 205, *a, note* 96, (1), lays it down as a general rule, and subject to very few exceptions, that, wherever a conveyance or assignment of an estate is *originally* intended as a *security* for money, whether this intention appears from the deed itself, or by any other instrument, it is always considered in equity as a mortgage, and redeemable, even though there is an express agreement of the parties, that it shall not be redeemable, or that the right of redemption shall be confined to a particular time, or to a particular description of persons. And after mentioning a great many cases in support of the rule, he observes, " In many of these cases, the courts have found it necessary not only to apply their general principles, but to determine the *fact* whether the conveyance was intended as an absolute sale, or as a security for money. If the money paid by the grantee, was *not* a *fair* price for the absolute purchase of the estate conveyed to him; if he was *not let* into the *immediate possession* of the estate; if, instead of receiving the rents for his own benefit, he *accounted* for them to the *grantor*, and only retained the amount of the *interest;* and if the expense of preparing the deed of conveyance was *borne* by the *grantor*, (it being customary in England, for the grantee to defray the expense of preparing the deed of conveyance, only in the case of an absolute sale;) *each* of these circumstances has been

VI.—3 B

[Kerr v. Gilmore.]

considered by the courts as *tending* to prove that the conveyance was *intended* to be merely *pignoritious.*" Also the *want* of a *personal* security, for the repayment of the money, has, taken in connection with other circumstances, been regarded as *tending* to show that a defeasible purchase, and not a mortgage was *intended*, but this circumstance *alone* has never been held sufficient to prevent a redemption. Miller *v.* Lees, 2 *Atk.* 496; Lawley *v.* Hooper, 3 *Atk.* 280; Floyer *v.* Lavington, 1 *P. Wms.* 271–2; King *v.* King, 3 *P. Wms.* 360 And although Lord Redesdale, in Luky *v.* O'Donnel, 2 *Scho. & Lefr.* 470, says, that it "is essential to a loan that the money is in all events to be *repaid* with interest by the borrower *himself*, or out of *his funds*," yet this does not militate against the proposition that the want of a personal obligation to repay, is not, of itself, sufficient to prevent a redemption; for the mortgagee, notwithstanding his inability to maintain a personal action at law, or bill in equity for want of a note, obligation, or covenant, to repay the money, still has his remedy by ejectment, whereby he may recover the possession of the mortgaged estate on default of payment. Howell *v.* Price, 1 *P. Wms.* 294. Or he may, in one year thereafter, proceed by *scire facias*, under our act of assembly, to recover his money, with interest, by a judicial sale of the estate, and thus obtain payment out of the *funds of the debtor*. But, that the mortgagee should have a remedy against the person of the mortgagor also, in order to make the conveyance a mortgage, as is said in Conway's executors *v.* Alexander, 7 *Cranch* 218, is more than I can assent to; for the operation of such a principle would be to deprive the grantor of the benefit of redemption in those cases only, where upon principles of natural justice, his claim to it, independent of contract, would seem to be strongest, upon the ground of the amount of money received by him, being grossly inadequate to a fair price for the estate; because when the excess of the value of the estate beyond the sum of money advanced upon it, is very great, there is no occasion for taking personal security; and, therefore, those are the cases in which it is most likely to be omitted; so that the result of such rule, if established, would seem to be contrary to what has obtained generally on the subject, by increasing the lender's chance of extraordinary gain in an inverse ratio to his risk of loss. Besides, it would undoubtedly be at variance with what was laid down by this court, in Wharf *v.* Howell, 5 *Binn.* 499, where it was held, that the absence of a covenant or other personal obligation to pay the money was no bar to a redemption of the estate.

Mr Wilmot, in his Compend on Mortgages, page 5, has adopted the rule, as laid down by Mr Butler, which accords not only with all the authorities on the subject, but likewise with what is said by Mr Powell, in his treatise thereon, who gave great attention to the subject, and has been very fully sustained by his late editor, Mr Coventry. In vol. i. pages 115 and 116, he says: "Every contract

[Kerr v. Gilmore.]

for *securing* of money by the conveyance of real estate to the lender, not made in contemplation of an *eventual arrangement of property* is in equity a mortgage; and all provisions and stipulations between the parties tending to alter in any subsequent event the *original* nature of the *mortgaged interest* or prevent the redemption of the estate pledged, upon payment of the money borrowed with interest, are void."

From what, then, would seem to have been established on this subject beyond controversy, it is perfectly evident, that if the original contract, under which the estate was conveyed, was in nowise connected with the payment of money or the performance of some collateral act or matter, but confined exclusively to the absolute purchase of the estate, it cannot be considered a mortgage. And, though, it is not necessary, in order to constitute a mortgage, that the condition or defeasance should be contained in the deed conveying the estate, yet it is indispensably requisite, I apprehend, if the former be in a separate instrument or deed, that both should be executed at the *same instant*, or, perhaps, more properly speaking, in fulfilment of the *same original agreement*, by virtue whereof their execution in contemplation of law will be made to relate to the *same instant* of time; so that both shall be considered as parts of the same act, and forming but one disposition in regard to the estate.

Mortgages of the fee in real estate, it must be observed, were originally made either by executing a deed of feoffment, containing the condition or clause of defeasance, or else by executing at the same time with the first a separate deed containing the second. But if the defeasance was executed *after* the feoffment, it came too late. 1 *Powell on Mort.* 4, *a*, (Coventry's ed.;) *Co. Lit.* 236, *b*. And the reason assigned is, because livery of seisin or corporal tradition being necessary at common law to all conveyances of land, no mortgage thereof was valid unless possession was also delivered to the mortgagee; and the livery *coram paribus* in such case, attesting an infeudation, in which there was no condition, the tenant must hold the land according to that investiture, which was absolute. But notwithstanding livery of seisin or corporal tradition *coram paribus* is now done away with by statute, and the deed of defeasance may be rendered available, so as to make the deed of conveyance, though executed days or even weeks before the defeasance, a mortgage, still it can only have this effect when it is executed in pursuance of and as part of the original agreement, which renders the whole but one act, in law. Upon this principle the case of Lynch *v.* Dearth, 2 *Penns. Rep.* 101, was decided. In the case of a feoffment or *other conveyance*, when the estate is *executed*, it must be made at the *same time* that the principal deed is executed, so that both instruments may form part of *one* and the *same* assurance. See Mr Rand's note to his edition of *Powell on Mort.*, vol. i. 351 *a*, note (1,) or, as is said in Folwell *v.* Forrest, 2

[Kerr v. Gilmore.]

*Saund.* 48, *a,* "at the *same instant.*" It is likewise there laid down by Mr Saunders, "that in the feoffment of lands, the condition must be contained in the same charter of feoffment, or in another deed, sealed at the *same time* with the charter of feoffment; otherwise the condition is *void,* because in a feoffment the estate in the land is *vested* and *executed* in the feoffee." This doctrine is sustained to its utmost extent in *Co. Lit.* 236, *b,* where it is said, "There is a diversity between inheritances *executed* and inheritances *executory;* as lands *executed* by livery, &c., cannot, by indenture of defeasance, be defeated *afterwards.* And so if a disseisee release a disseisor, it cannot be defeated by indenture of defeasance made *afterwards;* but at the *same time* of the release or feoffment, &c., the same may be defeated by indenture of defeasance; for it is a maxim of law, *quæ incontinenti fiunt in esse videntur.*" And even where the thing is *executory* in its commencement, it cannot be defeated, after it has been once *executed* by a *subsequent* defeasance. Hoe's Case, 5 *Co.* 90, *a,* Butler's note (151;) *Co. Lit.* 237, *a.* And in Capleston *v.* Boxwill, 1 *Chan. Ca.* 1, the court seem to have doubted the propriety of decreeing a redemption where, among other things, evidence rather went to show that the power to redeem grew out of a *subsequent* agreement, which, it was argued, could not give the right; because, if it were a mortgage, it must be so *ab initio* on the *original* agreement. 1 *Powell on Mort.* 125, *a,* (Coventry's ed.) And in Barrell *v.* Sabine, 1 *Vern.* 268, the lord keeper being satisfied that the *original* agreement was for an *absolute purchase,* and not for a mortgage; and that the agreement, if made at all for a reconveyance of the estate upon repayment of the purchase money within one year, was a *subsequent* agreement between the parties, therefore refused to decree a redemption.

Now in the case before us, although the point of the evidence offered and rejected is somewhat loosely stated, and, I confess, I am a little inclined to believe, from this circumstance, that it would probably have weighed nothing with the jury had it been given, yet it is plain that a part of it would have tended, in some degree, if admitted, to prove that the deed of defeasance was executed under an agreement entered into after the execution of the deed of conveyance to which it has reference, was fully completed; and if this fact had been made out to the satisfaction of the jury, it would have changed the character of the transaction from that of a mortgage, which it may very properly be considered, judging of it solely from the face of the two instruments, to that of an absolute purchase of the estate by Kerr, and an agreement made by him *afterwards* for the resale thereof; for if the execution of the deed by Kerr, agreeing to reconvey, formed no part of the agreement under which the deed of conveyance was made to him, but was actually executed by him in pursuance of an agreement made between the parties subsequently to the delivery of the deed of conveyance, it

[Kerr v. Gilmore.]

cannot, according to the principles already mentioned and most clearly established, as I conceive, be deemed a mortgage.

The evidence, then, if it tended in the slightest degree to prove that the conveyance was not founded upon or connected with a debt. or loan of money, and given as a security for the payment thereof, ought to have been received, and the weight and credit of it left to the jury, who alone were competent to judge of it in this respect. This was a most important fact, which was directly involved in the issue joined, and had it been clearly established, would have removed most completely, the only ground of presumption upon which the two instruments *per se* can be construed to be a mortgage. If the evidence, then, would have had such tendency, why should it not have been received? It cannot be pretended that its tendency was to alter, contradict, add to, or diminish the writings, and therefore inadmissible; because it is not stated nor averred in any part of the same, that the conveyance was given as a *security* to repay money lent or a debt created in any way: that is barely a *presumption*, which the law, from its most jealous anxiety to protect the interests of debtors from oppression, raises in favour of the grantor, from very slight circumstances; as those of the two deeds being dated on the same day, attested by the same witnesses, acknowledged before the same justice of the peace, and the sum of money to be repaid with interest being precisely the same with that mentioned in the deed of conveyance as the consideration of it. The only evidence, then, of the two deeds being, as it were, but one act, and amounting only to a mortgage, is the mere coincidence of those circumstances which, though such as usually attend the execution of a mortgage, can at most only raise a *probability* of the fact being so, that there was a loan of money, and that the conveyance was taken as a *security* for the repayment of it; and therefore, from its being only probable that it is so, parol as well as other evidence tending to prove the contrary is clearly admissible. Besides, it is from circumstances which are almost invariably established by parol evidence, that courts of equity frequently determine whether a conveyance, which on its face appears to be absolute, shall be considered as an unconditional sale, or as a security for money; and if the latter, therefore a mortgage: as, for instance, if the money paid by the grantee be not a fair price for the purchase of the absolute estate conveyed to him, especially if it be grossly inadequate. This would incline the court to consider it a mortgage. Newcomb *v.* Bonham, 1 *Vern.* 232; S. C. 2 *Ventr.* 364; Barrell *v.* Sabine, *Ibid.* 268. Or if the grantee be not let into possession of the estate immediately after the pretended purchase; if, instead of receiving the rents for his own benefit, he accounts for them to the grantee, and only retains the amount of the interest; if a collateral security, as a bond, judgment or warrant of attorney be given at the same time for further securing the supposed purchase money. 2 *Scho & Lefr.* 393. Or if the expense of preparing

the deed be borne by the grantor: each of these circumstances, which it is obvious, from their nature, cannot be proved otherwise than by parol evidence, has been considered by a court of equity as tending to prove that the conveyance was intended as a security for the money only, and not as an absolute sale. Price *v.* Perry, 2 *Freem.* 258; Vernon *v.* Bethell, 2 *Eden's Ca.* 110; Harris *v.* Harwell, *Gilb. Equi. Ca.* 11. And accordingly in Wharf *v.* Howell, 5 *Binn.* 503, the late chief justice, in delivering the opinion of this court, says: " The intention of the parties is to be discovered, not only from the writings, but from *extraneous* circumstances. The value of the property is an important consideration, and so are the acts and declarations of the parties. Cases of this kind are generally decided in chancery, and the chancellor receives evidence of matters *not appearing on the writings.* We have no chancery. The court and jury stand in the place of the chancellor. *Evidence is given to the jury,* who decide the whole matter under the direction of the court on points of law." And in Kunkle *v.* Wolfersberger, *ante* 126, decided by this court at the last Harrisburg term, these principles were not only exemplified and approved, but parol evidence was received to show that a deed of conveyance, absolute in its terms, was founded upon a loan of money, and taken by the grantee to secure the repayment of it; and the question thereupon submitted to the jury, whether it was not a mortgage, without any thing having been reduced to writing between the parties, tending to prove that there was any agreement for a redemption, or evidence of any kind tending to prove that the verbal agreement made between them for a redemption should be reduced to writing; which, perhaps, was carrying the principle of receiving parol evidence to the utmost verge of our civil jurisprudence.

The cases, however, of Maxwell *v.* Montacute, *Pre. in Ch.* 526; Walker *v.* Walker, 2 *Atk.* 98; and Joynes *v.* Statham, 3 *Atk.* 388, seem to establish the principle that parol evidence is admissible to show and explain the true intention and purpose of the parties, in order to develop the real character of the transaction. Seeing, then, that parol evidence is admissible to show that a deed of conveyance, appearing on its face to be an absolute purchase of the estate, was in reality only intended to be a mortgage, I must confess that I am unable to discover any good reason why the same species of evidence should not be received to show that it was in fact an absolute purchase of the estate, and so designed by the parties at the time of the execution and delivery of the deed of conveyance. That was all that was demanded in this case, but it was refused; and it does appear to me that the court below erred in doing so.

It is said, however, in support of the decision of the court on this point, that the deed of defeasance, made by Kerr, appears to have been executed at the *same time* with the deed of conveyance made to him, and therefore, from the tenor of both taken together, they constitute only a mortgage, and must be so consi-

dered. To this conclusion, there can be no objection, as long as it is assumed that both deeds were executed at what the law considers the same time. I have already shown, that the only circumstances from which the inference can be drawn, that they were executed at the same time, are those which are evidenced by the deeds themselves, and at most only raise a *probable* presumption of the fact being so. There is certainly no pretence for saying that the presumption here, in this respect, is *conclusive* or equipollent to the *presumptio juris et de jure* of the Roman law. It follows, therefore, of necessity, that it is liable to be rebutted, by the admission of any evidence, showing that the two deeds, in the eye of the law, were not executed at the same time. If the agreement then, for the repurchase was not made until *after the execution* of the deed of conveyance, as the evidence, offered and rejected, would seem to import, it is clear, from the principles which have been shown to exist in this behalf, that it ought to have been admitted.

Again, it is said, that the two instruments were executed, not only on the same day, but at the *same meeting of the parties,* which the evidence offered does not in the least tend to disprove, but on the contrary, seems plainly to admit, and therefore, must be regarded *in law* as having been executed at the *same time,* and forming but one instrument between them. There is certainly no authority, and perhaps, less reason, if possible, for saying that because these instruments were executed at the *same meeting* of the parties, that, therefore, either the one or the other of them, shall be concluded from showing, that the instrument for reconveying the estate, was, in point of fact, executed in the fulfilment of an agreement made between them *after* the first instrument conveying the estate had been completely executed, and the estate vested under it. It has been shown already, from both authority and reason, that the meaning *in law,* of instruments of writing or deeds, between the same parties, being *executed at the same time,* is where they are executed in fulfilment or pursuance of *one* and the *same original* agreement; for otherwise, it is impossible, that they can, on any rational principle, be considered as having been executed at the *same instant,* which seems to be what is required in order to make them *one* and the *same* disposition and assurance of the estate. I do not see how, in the nature of things, or in reason, the circumstance, of the whole having been transacted at the *same meeting,* ought to give it a fixed and determinate character, that shall not be changed or varied according to the truth of the fact, as it shall be shown by evidence *aliunde.* For twenty different things, even between the same parties, not having the slightest connection with each, may be transacted as well at the same meeting, as one thing only: and every day's observation and experience prove, that when many and different matters are so transacted, the effect or operation of each, is precisely the same, as

if they had been done singly, at as many different meetings, held specially for the purpose by the parties.

If the circumstance of the two deeds having been executed at the *same meeting* of the parties, is to have such a *conclusive* effect, as to preclude the introduction of evidence, to show that in truth, they were not made in fulfilment of the same original agreement, but, that the deed, containing the covenant to reconvey, was executed under a different agreement between the parties, made *after* the execution of the deed of conveyance, and not even thought of, or at all events not mentioned before, then in order to be consistent, and render the operation of the principle reciprocal, it would be necessary to hold all evidence incompetent, which would tend to control the presumption, had the court been of opinion, from the face of the deeds, that it was in favour of Kerr's being considered an absolute purchaser under the first deed. Suppose, for instance, it had appeared from the deeds, that they had been executed at different meetings, held on the same day, or on different days, or in different years, and the court had, therefore, thought it probable, and accordingly presumed that the first was an absolute purchase of the estate, and the second an agreement for a repurchase thereof; and the grantor, claiming that they were only intended to be a mortgage, and insisting upon his right to redeem, had offered evidence to show, that, though executed at different meetings of the parties, as it appeared from the deeds, yet they were both executed in pursuance of one and the same original agreement, in order to secure the repayment of the money with interest, mentioned in the deed of conveyance, which was lent at the time by the grantee to the grantor, I do not see how this evidence could have been received, consistently with the principle involved in the decision now made. But to reject such evidence, would be a violation so palpable of the rule established heretofore, in relation to this subject, that I take it for granted, it is not claimed: and certainly could not be maintained for a single moment. But does it not go to show, that the circumstance of the deeds being made at the *same meeting* of the parties, is not, and never could, with consistency and a proper regard for truth, have been made the *test* at all, and much less, the *incontrovertible* test of their being constituent parts merely, of one and the same act or assurance? Most unquestionably, it does, and even more; for it also conduces to prove, that the original agreement made between the parties, is the only safe test by which the question of mortgage or absolute purchase can be determined and settled, if their intention is to be regarded in putting a construction upon what they have done: consequently, in order that such test may be had, all evidence offered tending to show the terms, object, and extent of the agreement, ought to be received. Every question or difficulty that can be presented, will be readily solved or overcome by this test, when the terms and extent of the original agreement, are

[Kerr v. Gilmore.]

clearly and distinctly proved. If, that, however, cannot be done at all times, through a defect of testimony, it cannot be imputed to any want of sufficiency in the test to answer its end, but generally to inattention, want of care or foresight on behalf of the parties themselves. When this is the case, very possibly some injustice may prevail, but infinitely less than must necessarily result from the adoption of a rule, as a guide for decision, that would under any circumstances go to exclude the lawful design and intention of the parties from being made known, and carried into effect. This would be, to prevent the truth from being disclosed, without which, it is utterly impossible, that justice can be administered or maintained.

It is the original agreement, that is to govern and give effect in law, to all the subsequent acts of the parties performed in pursuance thereof; and that is to determine whether they are to be taken as parts of the same design; and if so, that they shall, when performed, be deemed in law *as one* and the *same act*, accomplished at the *same instant* of time. This is also the conclusion of the law, though the various acts performed in accordance with the original design, should happen to be executed at as many divers meetings, held on divers days by the parties.

Then suppose the agreement between the parties, to have been made for the absolute purchase of the estate in fee, at a certain price, which is paid, and the deed of conveyance, in conformity to to the agreement, executed and delivered by the vendor to the vendee; can it be questioned, nay, must it not be admitted, without even the least shadow of doubt, as nothing more remains to be done in order to fulfil and complete the performance of the agreement between the parties, that the *instant* the vendee receives the deed, he becomes not only invested with the title to the estate, but likewise the perfect and absolute owner thereof; and considered in law, and equity too, at and from that moment, as much so, as if he had been the owner of it for years before, or should continue to be so, for years thereafter, without doing any act to affect his right? So completely seised is he of the estate for his own entire and exclusive use and benefit, that if he were to marry the next minute after receiving the deed of conveyance, and before the parties had separated, his wife upon his death, if she survived, would be entitled to her dowry out of it. 2 *Bl. Com.* 131–2. But according to the notion that seems to be entertained, and upon which this case is now determined, he would have the right after his marriage, at any time *during the meeting* at least, at which he received the deed, under a new agreement, then made and mentioned, for the first time between him and his vendor, without the concurrence of his wife, to deprive her of her right to dower in the estate, in any subsequent event, by making a deed, binding himself to reconvey the estate to his vendor. This is certainly introducing a new rule, and abrogating the old upon this subject.

vi.—3 c

[Kerr v. Gilmore.]

But suppose again, the vendor in such case, before making the deed of conveyance, to have made his will, by which he disposed of the same estate to some third person, who after his death would not be his heir at law; it cannot be controverted, that his thus parting with the estate, though but for a moment, by making a deed of conveyance, founded upon an absolute sale thereof, would, in law, be a clear revocation of his will *in toto*. And it would continue to be so, notwithstanding he repurchased the estate, and had it reconveyed to him, so that the devisee, named in the will, would not be entitled to take under it, upon the death of the devisor, without a republication thereof having been made subsequently to the repurchase. Dister *v.* Dister, 3 *Lev.* 108; Arthur *v.* Bockenham, *Fitzgib.* 240–1; Parsons *v.* Freeman, 1 *Wils.* 310; Noden *v.* Griffith, 4 *Burr.* 1960; Vawser *v.* Jeffery, 2 *Swanst.* 273; 1 *Powell on Mortgages* 111, by Coventry *in notis.* But this principle, which has ever been considered as firmly established as any other in the law, will be exploded to a certain extent by the decision in this case. For by connecting the repurchase with the first purchase, and considering the two acts, though entirely distinct and independent, as only *one act*, and then ascribing to them the character and efficacy of a mortgage merely, it will only work a revocation of the will *pro tanto*. Sparrow *v.* Hardcastle, 3 *Atk.* 804; Hall *v.* Dench, 1 *Vern.* 329, 342; Bridgewater *v.* Bolton, 2 *Ld. Raym.* 968; Rider *v.* Wager, 2 *P. Wms.* 334–5; York *v.* Stone, 1 *Salk.* 158; Perkins *v.* Walker, 1 *Vern.* 97; Parsons *v.* Freeman, 3 *Atk.* 741; S. C., 1 *Wils.* 308; Cave *v.* Holford, 3 *Ves.* 650; Harmoad *v.* Oglander, 6 *Ves.* 221; affirmed, 8 *Ves.* 106; Vawser *v.* Jeffery, 16 *Ves.* 519; S. C., 2 *Swanst.* 272–3; Tucker *v.* Thurston, 17 *Ves.* 131.

So the law, by the adoption of this new principle, will be changed entirely in regard to what, heretofore, has ever been deemed sufficient to make the holder of an estate in fee, who at first succeeded to it by descent as heir *ex materna*, a purchaser thereof, and produce thereafter a change in the line of descent. For instance, if a man, seised of lands in fee, as heir on the part of his mother, made a feoffment thereof in fee, and took back an estate to him and heirs, he thereby became a purchaser of the land, and held it by purchase, and not by descent as before; and if he died without issue, the heirs on the part of the father instead of the mother, were first entitled to inherit. *Co. Lit.* 12, *b.* So, if he had by a deed of bargain and sale, for a money consideration, received of the bargainee, conveyed the land in fee, and upon a repurchase thereof, taken a reconveyance of it in fee, the effect, under our act of assembly, would have been the same as by deed of feoffment, though all done at the *same meeting* of the parties. But if the change of seisin in the land is to be deemed of no moment or account, because it only endured for a part of the time spent by the parties at the same meeting, it is difficult to say, and renders it uncertain, what may be the effect of it.

[Kerr v. Gilmore.]

It may be said, however, that a deed of reconveyance executed at the same meeting with that of the execution of the deed of conveyance, would give to the transaction a very different character from what it would assume, if instead of a deed of reconveyance, a deed only binding the bargainee to reconvey were executed. But suppose, in the latter case, a deed of reconveyance to be executed subsequently, in conformity to the agreement made at the first meeting, what is to be the effect of it? Why shall it not be regarded, as of equal effect, at least, with a deed of reconveyance, made at the same meeting, with the execution of the first, when it can be proven clearly, that such deed of reconveyance, executed subsequently, was made in pursuance of a separate and distinct agreement for the repurchase of the estate? But will not the rule of decision here exclude all such proof, and what is to be the effect then? It is worthy of remark, and, perhaps, ought always to be kept in view, that a departure from a settled rule of property, though only in a particular case, may produce difficulties and embarrassments in other cases, not discoverable at the time, and therefore ought to be avoided even by the legislature, unless in a clear case; but in no case have courts the power to alter or disregard such a rule.

But I am unable to discover that any inconvenience, much less real evil, has been felt from the operation of the rule that has prevailed hitherto on the subject. All the authorities and decisions prove clearly, that no conveyance of real estate has ever been held to be a mortgage, without it appeared that it had been given as a *security* for the repayment of money lent, a debt contracted, or the performance of some collateral act. Its real object must appear in some form to have been, to make it merely a *security*, and therefore, at most, only a *charge* upon the estate, so that the right derived therefrom, to the grantee, is considered, in equity, merely of a personal character, and as falling within the rules applicable to personal estate. Hence the money secured thereby, if not paid till after the death of the grantee, will belong to his personal estate, and be receivable only by his executors or administrators; and not by his heirs. Accordingly his right, under the mortgage, does not come within the provisions of the statute of frauds, made in regard to real estate; and, therefore, he may transfer or assign it without writing, or release his right altogether, in the same way for a valuable consideration. Martin *v.* Mowlin, 2 *Burr.* 978–9. But from the very nature of the thing itself, as well as authority, the deed of conveyance must, in all cases, obtain its distinctive character the instant it is delivered or executed. It is then either a mortgage or it is not. But if it is not a mortgage then, we have seen that it cannot properly be made so afterwards. Indeed having taken effect once as an absolute deed of conveyance, thereby constituting the grantee the sole and absolute owner of the estate, it is incongruous to suppose that he can be converted into a mortgagee, and his estate

[Kerr v. Gilmore.]

therein, into that of personalty, by a subsequent deed, purely executory, upon which nothing has been received, parting with no right, but agreeing merely to reconvey the estate, upon payment of the consideration therein mentioned within a certain time, though it be made the next minute after he became the absolute owner thereof. Why should it be so in the case of his having been owner of the estate only, for a minute or so, and not in the case of his having been the owner of it for years before? For the seisin of the estate being in him, not for any special purpose previously agreed on, but as the absolute owner and beneficiary thereof, though but for a single instant, made him as completely the absolute proprietor of the estate, for that instant, as if he had been so previously thereto for years. And consequently whatever he does with a view, either to charge the estate, or dispose of his right thereto in any way, must be done precisely in the same manner and form as if he had been the owner thereof for years. But whether he was seised of the estate merely for a special purpose, or as the absolute purchaser for his own exclusive use and benefit, must depend upon the nature of the agreement under which he received the conveyance. But if a rule is to be established, that will go to exclude the evidence showing what the agreement really was, then, as it appears to me, we shall have a new rule on the subject of mortgages; and it may be that under it, there are some absolute purchasers of real estates, for whom it was impossible to imagine that such a rule would be brought to bear upon them, who, after having paid fair prices for the estates, became bound by subsequent agreements to reconvey upon receiving the purchase money again, and interest, within fixed periods, but the money not being paid, have taken possession of the estates, and made valuable improvements thereon, who will lose the value of the improvements, that may greatly exceed the remaining value of the estates. If it shall happen to be so, it will be very unjust, because contrary to the agreements and understandings of the parties, and to every thing that has heretofore obtained on the subject; contrary, also, to every thing decided or laid down, in Colwell *v.* Woods, 3 *Watts* 188, which has been vouched in order to sustain the decision of the court below. In that case, all the evidence tending to show the nature and extent of the agreement between the parties, under which the deeds were executed, was received and submitted to the jury under the direction of the court. That the evidence was properly admitted, was never questioned, but the court instructed the jury, in answer to a point submitted by the counsel for the plaintiff, that the deeds of conveyance and defeasance taken together, were not, from the face of them, to be construed a mortgage, but a conditional sale. This court, however, thought differently, and reversed the judgment of the court below, on account of their direction to the jury on this point alone. And certainly I have always been under the impression that the deci-

[Kerr v. Gilmore.]

sion of this court, in regard to it, was founded upon their belief, that the deeds, *per se,* furnished *prima facie* evidence, going to show that the transaction was grounded upon a *loan* of money, and the deed of conveyance given as a *security* for the repayment of it. It will be difficult, I think, to show from the report of the case, that any thing beyond this was decided, or that the decision made was placed upon other grounds; so that to affirm the judgment of the court below, here, will, as it appears to me, be in direct opposition to the principles recognized and practised on in the course of the trial of Colwell *v.* Woods. I, therefore, think the judgment of the court below, ought to be reversed, and the cause sent back for a new trial.

Judgment affirmed.