Chief Justice Robertson
delivered the Opinion of the Court.
To an aetion of covenant brought by Estill against Dillingham, for a breach of a warranty of soundness contained in a bill of sale of two slaves, the defendant (now appellant,) in substance and effect, pleaded that the following writing — “ I, Benjamin Estill, release said Dillingham “ from any responsibility of said negroes, as witness my hand— “ Benjamin EstUV — was executed simultaneously with the bill of sale, and was an integral part of the contract of sale, intended to operate as a defeasance of the warranty.
The Circuit Court, being of the opinion that the writing, as pleaded, could not bar the action, sustained a demurrer to the plea; and that decision presents the only question which wil] now be considered.
The writing in question cannot operate as a- technical release: first — because, if it were a distinct contract, subsequent to the execution of the bill of sale, it was an executed agreement, and could not be effectual as a release, as it is without a seal. Second — because, if, as pleaded, it was delivered simultaneously with the bill of sale, and was a part of the contract of sale, there was no pre-existent liability to release. As it literally purports to be a release, the legal presumption, prima facie, is, that it was posterior to the bill of sale, or applied to something else. This presumption, strong as it may be, can, however, be defeated by positive proof. And if this- writing can, un. der any circumstances, be deemed a part of the contract of sale, executed with the bill of sale and at the same time, as evidence of a constituent portion of the true agreement of the parties respecting the warranty of the same slaves, *22 then, incongruous and extraordinary as such an entire contract might seem to be, this branch of it might be sufficient to show, that the written memorial of the whole contract, considered altogether, contains, according to its proper interpretation and legal effect, no warranty of soundness — McDowell vs. Hall, 2 Bibb, 611; Bliss vs. Branham, 1 J. J. Marshall, 200. In such an hypothetical state of case, it would be as it would have been had it been placed as a postscript at the bottom of the bill of sale, and delivered with it. And then, of course, a seal would have been altogether immaterial; for, as, in this view of it, it would not be deemed a distinct and seperate agreement, and could not therefore be deemed a release, and as some effect should be given to it, the literal import of its terms should yield to the only interpretation as to the intention of the parties, which could allow it any consistent or practical operation; and that is, to consider it, as it could in effect only be, executory, and as having been intended to mean precisely what it would, by itself, have literally imported had it been written thus —“ I agree that II. II. D. shall not be responsible ^c.” — or thus — “ It is understood that II. H. D. is not to be responsible “ on the foregoing warranty.” This is the only effect it can have if the facts averred in the plea be true.
Here, however, the counsel for the appellee argues, that, even thus considered, it can have no legal operation on the warranty, because, as he insists, it is only a parol agreement, and cannot therefore defeat an agreement possessing all the dignity of a specialty.
But waiving any other consideration which might be suggested in reply, a sufficient answer may be found in the fact, that the writing, which the argument thus degrades, being, as it must be, to operate at all, if the plea be true, executory in its character and operation, it has, in virtue of a statute of 1812, the dignity and effect of a sealed contract. The bill of sale being unsealed, the' warranty itself derives all its efficacy and factitious character as a covenant from that act of assembly. If each writing then be deemed executory, they are equal in dignity ; and if that relied on in the plea, cannot have the effect of a defeasance executory in its operation, it was *23 not, as alleged, executed simultaneously with the warranty, or did not refer to the warranty.
r°ferJg¿ to, it is sufficient, One writing cannot be connected with another unless it referió it. But where there are words of reference to the subject matter, as “the said negroes,” though there be no description of the and proof aliwndi (consistent with the writo'^how that they were both simultaneously executed, and are part of the same contract.
The terms “I, B E, release said D from any responsibility of said negroes,” construed to have the effect of nul- „ „ clause of warranty of taine^in tfebUt of sale,
But the counsel insists, that the writing pleaded cannot be connected with the bill of sale by parol testimony, or by averment merely. It has been decided that one writing cannot be connected with another, unless it in some way refers to it. But, if that here relied on was cotemporaneous with the bill of sale, it can be understood as referring to it without any parol proof. For surely if a vendor of slaves make a bill of sale with warranty, and, at the same time, the vendee deliver to him a writing stipulating that he shall not be responsible for “ the said negroes,” the latter agreement might, without any extraneous proof, be understood to refer to the former, and to mean that the vendor should not be respondence, to prove that they were given at the same time; and indeed, as that given by the appellee has no date, tire fact of identity as to date is far from being intrinsically improbable. Then, the fact, being sufficiently averred in the plea, is admitted by the demurrer. sible on his formal warranty. It would not be inconsistent with either of the writings, or with any rule of evi-
But, these preliminary points being thus disposed of, it remains to be considered whether the agreement that the appellant should not be responsible for the negroes, clearly imports that he should not be liable on the warranty contained in the bill of sale, as signed by the appellee.
And here, without amplification, we will remark, that though the phraseology is awkward and somewhat indeterminate, we have been unable to give it any other judicial interpretation than a declaration that, though the bill of sale, as written, imported a warranty of soundness, such was not the true contract of the parties. Looking only at the two writings, and at the pleadings, we do not feel authorized to infer or presume that the words, “ any responsibility of said negroes” — were intended to mean any thing else than the only liability imported by the bill of sale: that is, any responsibility which might, otherwise, have been incurred on the warranty. As both writings should, in every respect, have full effect, if *24 possible, we would not allow one to defeat or explain away the literal import of the other, if the record had presented any fact which would authorize a judicial application of the words to any other responsibility than that imported by the warranty. No other responsibility can be presumed. And “ any responsibility of said ne- “ groes” is sufficiently comprehensive to embrace all responsibility, of every kind, respecting the negroes.
It is not for this court to ascertain the motives for such an anomalous contract. But, were we to indulge in conjecture, we could imagine but one of two motives: first — that the bill of sale may have been, through mistake or inadvertence, drawn with a warranty contrary to the understanding of the parties, and they might have preferred to let it remain unobliterated, and to neutralize the warranty by a counter supplemental agreement. Or, second — they may have designed that the vendee might, by showing his warranty, impose a delusion on otherfe.
The zealous and ingenious counsel for the appellee Contends, that the latter could have been the only motive; and that therefore the defeasance, as it has been styled, should not be permitted to operate. Had the assumed fact been established, then, as both parties should be deemed to have been in equal fault, the condition of the defendant in the action was the best, and the fraud, if there was vitiating fraud, would infect the whole contract, and prevent its enforcement between the parties. If, as suggested in argument, the rights of others have been, or will be, injuriously affected, the sagacity of the counsel will be at no loss for an appropriate remedy against the proper person or persons.
Deciding, as we must do, on the pleadings alone, according to their legal effect, it is the judgment of this court that the Circuit Judge erred in sustaining the demurrer to the third plea; and that therefore the judgment of the Circuit Court be reversed, and the cause remanded, with instructions to overrule the demurrer.