## DUNLAP'S ADM'R v. WRIGHT.

It is a familiar principle, that two or more writings, executed cotemporaneously, between the same parties, and in reference to the same subject matter, must be deemed one instrument and as forming but the same contract.

See this case as to executory contracts, where a mortgage is taken at the same time to secure the payment of the purchase money, and the purchase money is not paid.

Whatever may be the effect of an ordinary mortgage to secure the loan of money, or the rights of the parties thereto, yet where it is to secure the payment of the purchase money, and is executed simultaneously with the conveyance, the vendor has, until the money is paid, or the mortgage foreclosed, the superior right to the land; and especially if in possession after the vendee has made default, he cannot be turned out of posssession, by process of ejectment or trespass to the title, notwithstanding the claim for the purchase money may be barred by the general law of limitations.

This is not a suit for specific performance. It is not one in which the plaintiff shows equity, and, if in default, gives some reasonable excuse, and on offering to do equity, calls on the Court to enforce his rights.

Appeal from Victoria. The contest in the Court below turned entirely on the questions whether Mrs. Wright had authority to convey, either in fact, or by operation of law, during the absence of her husband from the country; whether there was an actual rescission of the contract, which involved the question whether Alexander Dunlap purchased for himself, or as trustee for Richard G. Dunlap; and whether the defendants, failing the other defences, could hold the land by virtue of the statute of limitations. The briefs of counsel, so far as they related to those points, are omitted. The facts, so far as they are material, are stated in the opinion of the Court.

*R. Hughes*, for appellant. That the claim is stale, the plaintiff has been guilty of laches, and these are evidence of an abandonment of the agreement, was not made a question in the Court below, in any form, as far as we can see from the record. But, as this may be insisted upon, in this Court, the attention of counsel will be directed to it. The case of De-

Cordova v. Smith, 9. Tex. R. 129, may possibly be referred to and relied upon, to maintain all or some of the positions assumed on this subject. The obvious reply to any thing which can be said for the appellees, on the subject, is, that the rules laid down in De Cordova v. Smith, are only applicable to executory contracts, whether as to trusts or other unexecuted agreements, when attempted to be enforced, by resort to a Court of Equity. And that case was the attempted execution of a trust, the defendant's intestate having obtained a patent in his own name, for a tract of land, which he had agreed to convey to him under whom the plaintiff claimed. And as to this, the Court determined that the demand was stale; those seeking to enforce the trust, had been guilty of laches; and the time which had elapsed, without attempted enforcement of the contract, was evidence of mutual abandonment.

But this can have no application to an action of law, commenced on a legal title to try title to, and recover a tract of land. Nor can there be any application of the rule stated in the case cited, of a time adopted, analogous to the statute of limitation; for the reason that there was, it has been admitted, an adverse holding of the land in contest, from the 1st day of January, 1839; but which could not avail the defendants any thing, under the 15th, 16th, or 17th Sections of the Act of 1841, because they could not bring themselves within the rule presented. But notwithstanding all this, there was and is a period which the defendants might have availed themselves of, provided their adverse holding had continued uninterrupted for the requisite period. That period is ten years, and is found in the 14th Section of the Act of 1841. (Hart. Dig. Art. 3390.) The substance of that Section is, that no one shall make entry into lands, tenements, &c., but within ten years next, after right of entry accrued; and is, in substance, the same with the Act of 21 James I. Ch. 16, and differing only in the time; the statute of James I. prescribing twenty, and the 14th Section of the Act of 1841 ten years, within which the entry is to be made, after the right of entry

accrued. The construction of the statute of James I. is well settled; and a holding by any one, adversely to the true owner, for twenty years, will bar the right of entry, and, consequently, the right of action, by ejectment, will also be barred. (Angell on Lim. 384, Sec. 2.). With us, there is no action of ejectment, but instead of it, we have the action of trespass to try title to land which, by express declaration of the statute, in the trial is to be governed by the rules which govern an action of ejectment; and it follows, as a consequence, whatever would bar an action of ejectment, will also bar our action of trespass, as both actions depend, for their right to maintain them, upon the right of entry.

But it may be said that the defendants could not have the benefit of this defence, because the ten years, in which the plaintiff could have a right of entry and a consequent right of action, had not expired when the action was commenced. From this, it cannot follow that the Court can make and interpose a bar, one having been precribed by law; but the consequence is, that the plaintiff is not barred of his action.

The opinion referred to at page 148, shows that the Court would not have adopted a period of limitation, by analogy to the statute, if there had been any provision of the statute, which applied and embraced the case. And here, too, no period can be adopted, for the reason that an express provision of the statute applies; and consequently, it cannot be said that the demand is stale, the plaintiff has been guilty of laches, or that the contract has been abandoned, nor did the law, indicated by these positions, apply to an action at law.

*Phillips & Phillips* and *Lytle & Stockdale*, also, for appellant.

*J. N. Mitchell*, for appellees. This is an action of trespass to try title to land; in it the plaintiff can only recover on the strength of his title merely; and as by his petition he does

not proceed for specific performance of contract, that cannot be decreed by the Court, under this state of pleading.

But the defendants having in their answers proceded for, and prayed a rescission of the contract, that may be decreed to them; especially as it appears by the proof in this case, that the purchase money has not been paid or tendered; for, by the lapse of time, the lands have greatly increased in value. Time of payment became, and is, material, and of the essence of the contract, and non-payment by plaintiff's intestate, at the time stipulated, or at the least in a reasonable time, authorized the defendants to treat the contract as a nullity; and there was no necessity to foreclose the mortgage; for whatever conveyance was made, was only in the intention of the parties and in legal effect, merely a part of the mortgage, constituting the two together one integer, entirety or whole act; and to become perfect and effectual only after the performance of the conditions stipulated for on part of the mortgagor.

*A. S. Cunningham*, also, for appellees.

LIPSCOMB, J., did not sit in this case.

HEMPHILL, CH. J. This is an action of trespass to try title, brought on the 24th February, 1847, by Wilkins Hunt, administrator of Alexander Dunlap, deceased, against John D. Wright. Margaret T. Wright, wife of the defendant, subsequently intervened and became a party defendant. The allegations of the petition are in the usual form. The land is described as lying in the county of Victoria, on the west side of the Guadalupe river, adjoining the lines of the town tract on the upper side, and as containing a full league, fronting on the river at least two miles and a half, and running back with parrallel lines so as to include the quantity of a league, being the same land surveyed by James Kerr, in 1830, for Margaret Trudeau, now Margaret Wright. There is a prayer for damages and for a writ of possession.

The verdict and judgment were for defendants; and motion for new trial being overruled, the plaintiff appealed.

Several points of importance are presented in the cause. It will not be essential, however, to discuss but one; for that has such controlling force, that if decided in favor of defendants, the judgment must be affirmed—although all others might be admitted or decided for the plaintiff—and that is, whether under the facts of this case, the purchase money being unpaid, the plaintiff has any such title as will support the action. It may be admitted, for instance, that Margaret Wright, the vendor, had competent authority and lawful right to sell; that Alexander Dunlap was the sole vendee, Richard G. Dunlap having no interest; that the sale had not been rescinded by either verbal or written agreement, or by any one authorized to make such rescission; yet, notwithstanding these admissions, the question would still be, whether the plaintiff, not having paid the purchase money, has such title as would, in an action of trespass to try the title, authorize him to recover the land and the possession from the defendants, its original owners and vendors. The character of the plaintiff's title will depend on the facts and circumstances accompanying and forming a part of the transaction of purchase and sale, between the parties. The deed of conveyance from Margaret Wright was executed on the 15th December, 1837; for although it is written eighteen hundred and thirty-six in this transcript, yet that is obviously a mistake as is conclusively shown by the recitals in the bond and mortgage to secure the purchase money, given on the day of the sale. They are both dated on the 15th December, 1837; and they both recited the fact of the purchase having been made that day. The bond, in substance, so far as this league is affected, promises to pay Margaret Wright on the 1st day of March then next ensuing, two thousand dollars and to pay the additional sum of two thousand four hundred and twenty-eight dollars in two years from the date, provided Margaret Wright procured a good and valid title for said league, to the said Alexander, his heirs, &c., within two years,

75

from the proper authorities of either the Mexican or Texian government. The mortgage is given to secure the payment of this bond. It does not vary the conditions of payment. The obligation of the vendor to produce a good title, before the last payment, is somewhat differently expressed, she being required, within the two years, to produce a regular chain of titles which will be a valid title and paramount to all other claims.

What is the effect of the simultaneous execution of the conveyance, bond and mortgage. Unquestionably to make them all parts of the same design; to constitute them, in effect, but one act, and require them to be construed as but one and the same agreement. It is a familiar principle, that two or more writings, executed cotemporaneously, between the same parties and in reference to the same subject matter, must be deemed one instrument, and as forming but parts of the same contract. (Howards v. Davis, 6 Tex. R. 181; 2 Bibb, 610; 4 Mass. R. 569; 4 Phillip's Ev. 1421; 15 Johnson, 457; 3 Wend. 233; 3 Dana, 21; 6 Watts, 405; 3 Id. 138; 1 Johns. Cases, 91; 2 Denio, 130; 6 Cowen, 316.)

In the case from 4 Mass. R., it was held, that where a deed was given by a vendor who takes back at the same time a mortgage to secure the payment of the purchase money, they must both be considered as part of one and the same contract, as taking effect at the same instant, and as constituting but one act. In Stow v. Tifft, 15 Johns. R. 458, the character of the transaction where a deed is given and a mortgage is taken back to secure the purchase money, is described as follows, viz: that the bargainor sells the land to the bargainee on condition that he pays the price at a stipulated time, and if he does not, that the bargainor shall be reseized of it, free from the mortgage; and whether this contract is contained in one and the same instrument, as it may well be, or in distinct instruments executed at the same time, can make no possible difference; that although Courts of equity have relieved the mortgagor from the accident of non-payment at the stipulated period, and

that Courts of law have considered the interest of the mortgagor as liable to be sold on execution, yet this does not interfere with the question how the contract is to be considered between the original parties, when the equity of redemption is gone and forfeited, &c.

The cases from 4 Mass., 15 Johnson, and 6 Cowen, 316, were actions to recover dower, by widows whose husbands had purchased lands, but had given mortgages to secure the purchase money simultaneously with the conveyances. It is a principle of the Common Law, that where the husband has seizin, although the land abide in him but a moment, yet the wife shall be endowed; as where father and son were joint tenants and were both hanged in one cart, yet because the son died last, his wife was entitled to dower. The seizin, though but for a moment, was for the benefit of the survivor. (Cro. Eliz. 503; 2 Bla. 132.) Yet, notwithstanding this principle, it was held in the above cases, that the seizin was but instantaneous, that it was parted with by the mortgage at the very instant it was received; and that consequently the wives were not entitled to dower.

The decisions in New York have, in our Courts, increased authority, from the fact that in that State the mortgage is regarded but a mere security for the debt; that the mortgagor is the owner against all the world, subject to the lien of the mortgagee. (6 Johns. R. 290; 15 Johns. R. 461–465; 5 Wendell, 615.)

The effect of the principles in these cases is, that although the vendor's deed may be absolute, yet if a mortgage for the purchase money be given back at the same time, the fee will substantially remain in the vendor. The sale will be but conditional, the ultimate right of the fee depending upon the performance or non-performance of the conditions. If the purchase money be paid, if the mortgage be satisfied, the seizin will be regarded as having been in the vendee *ab initio*, or from the date of the purchase. If not paid, the vendor will, in the language of Stow v. Tifft, be reseized, free of the mort-

gage. In the case of Howards v. Davis, we held that until payment, the vendor had the best right or superior title to the land ; that if the contract were executory, in default of payment he might consider the purchase as abandoned, and treat the property as his own ; if executed, and with a mortgage cotemporaneous with the deed, he would in effect hold the estate in his previous right, subject to be divested on payment, and with such relief to the vendee as may be afforded on the special terms of the contract, or under proceedings to foreclose the mortgage.

In the case before us, the vendee went into and remained in possession until January, 1839, when he left the place, and the defendants took, and for aught that appears, have ever since retained possession. We have held in various cases that a mortgage is but an incident of the debt, and if, on the debt being barred, the mortgage security is lost, the effect of judgment, in this case, for the plaintiff, would be to eject the original owners out of possession held by them for many years, and to admit to possession a vendee who, by his acts, has evinced an intention to abandon the contract; who has not paid, or offered to pay, a farthing of the purchase money ; who pledged the land at the instant of the purchase, or, in the language of the cases, conditionally revested the fee : and this defaulting vendee being inducted into possession, the vendor is to be left without the shadow of redress, his bond and mortgage having been barred by limitation. Such consequences are too monstrous to be tolerated. They are sanctioned by no principle of law or justice.

Whatever may be the effects of an ordinary mortgage to secure the loan of money, or the rights of parties thereto, yet where it is to secure the payment of the purchase money, and is executed simultaneously with the conveyance, the vendor has, until the money is paid, or the mortgage foreclosed, the superior right to the land ; and especially if in possession after the vendee has made default, he cannot be turned out of possession by process of ejectment or trespass to try title. The

tendency of decisions, in this State, has been to support the rights of the vendor, to the land, as against a defaulting vendee, who has not paid, or offered to pay, the purchase money; and these decisions we believe to be supported on principles of law too solid to be shaken or disturbed. (Browning v. Estes, 3 Tex. R. 462; Whiteman v. Castleberry's heirs, 8 Tex. R. 441; Adm'r of Browning v. Adm'r of Estes, 11 Tex. R. ante.)

This is not a suit for specific performance. It is not one in which the plaintiff shows equity and, if in default, gives some reasonable excuse, and on offering to do equity, calls on the Court to enforce his rights. It is based on a supposed, mere, naked, legal right; and we have seen that, without performance on his part, the vendor, and not the vendee, has the superior title, and, at least, if in, is entitled to retain possession.

Had this been a proceeding for specific performance, the plaintiff, before he could have been entitled to relief, must have shown equities, which are not apparent; at least, they are not to be found in the voluminous evidence taken in the cause. The intestate, though in possession for more than one year, totally failed to make the first payment, which was due in less than three months from the sale; and though he lived some three years afterwards, yet he neither paid nor tendered payment. It may be said that he was not bound to make the last payment, inasmuch as the vendor did not, within the two years, produce a valid title. That may be; but, as he had made default in the first payment, the presumption was, that he had abandoned the contract, and she was not bound to take further measures to have it carried into execution. He had not made the first payment, and she was under no obligation to prove to him that he ought to make the last. Had she been bound, under the circumstances, to exhibit a valid title, and refused, the effect would be to relieve the vendee from obligation, but not to give him the land. He cannot claim, that under such condition, he was excused from payment; and that she was bound, even after, by limitation, her

rights to enforce payment were barred; and that then, without payment, he could claim the property as his own.

The plaintiff now manifests a willingness to take the land, with all the defects of title. Had he done this at an earlier period, accompanied with an offer to perform his stipulations, his rights would have presented themselves in a very different aspect from that in which they can now be regarded.

It is not necessary to comment specially on the pleadings of defendants. They extend through a series of years. They set up the proper defences, but, in addition, they advance pretensions fully as much, if not more preposterous, than those of the plaintiff. He claims the land without paying for it, and they, in their last plea, claim judgment for both money and land.

Judgment affirmed.