## Case No. 7,811.

### KING et al. v. YOUNG MEN'S ASS'N.

[1 Woods, 386;[1] 11 Am. Law Reg. (N. S.) 760.]

Circuit Court, E. D. Texas. May Term, 1872.

MORTGAGE — RIGHTS OF MORTGAGEE AT COMMON LAW—EQUITY OF REDEMPTION — CONVEYANCE— RESERVATION OF VENDOR'S LIEN — SALE TO A THIRD PARTY—NOTICE.

1. In Texas, a vendor's lien is not superior to or different from the ordinary lien of a mortgagee holding a mortgage given for the purchase money of the property mortgaged.

[Cited in Gordon v. Rixey, 76 Va. 700.]

2. At common law, a mortgage transferred the legal title to the mortgagee, who could at any time take possession of the property and hold it until his debt was paid and the land redeemed.

3. Equity, however, gave the mortgagor the right to redeem, which could not be taken from him by anything short of judicial process or a release from himself or great lapse of time in demanding his rights.

4. In Texas, the reservation of a vendor's lien in the deed of conveyance is equivalent to a mortgage taken for the purchase money contemporaneously with the deed. The purchaser has the equity of redemption precisely as if he had received a deed and given a mortgage for the purchase money, and he has the right to redeem.

5. If the purchaser has sold the land to a third person, and the deed has been duly recorded or made known to the original vendor holding a vendor's lien, the original vendor cannot turn such third person out of possession or extinguish his rights without legal process.

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

6. It was a general practice throughout Texas, though not required by law, to record deeds and mortgages in separate record books: *Held*, that when a deed was recorded in the book for the record of mortgages, such record was irregular, and imposed no legal or constructive notice on third persons.

7. Actual notice of a deed is quite as effectual as constructive notice based on the record of the deed.

[Cited in The John T. Moore, Case No. 7,430.]

8. Land was conveyed to a grantee, the vendor retaining a vendor's lien for a part of the purchase money. The grantee conveyed to a trustee, who took the title in trust for a joint stock company, and went into possession. The original vendor prosecuted a proceeding to foreclose his vendor's lien without making the trustee a party: *Held*, that the right of the company to redeem was not foreclosed.

9. In such a case, the proper party to file a bill to redeem would be the trustee. But where the trustee had been removed, and the directors of the company had failed to appoint a new trustee, the stockholders might file a bill to redeem.

This was a cause in equity which was submitted for final decree on the pleadings and proofs.

W. P. Hamblin and E. P. Turner, for complainants.

Peter W. Gray, Mr. Botts, and Geo. Goldthwaite, for defendants.

BRADLEY, Circuit Justice. This bill is filed to redeem certain lands in Harris county, Texas, which were proposed as a site for a projected city, to be called New Houston. The case stated by the bill is substantially this: That on the 18th of April, 1866, John T. Brady purchased the lands in question for the sum of $29,602.50, payable, half in cash, and half in promissory notes, secured by a lien in the nature of a mortgage reserved to the vendors in the deed. That on the 27th of December, 1866, Brady conveyed the land to William P. Hamblin, as trustee for Isaac T. Tinsley and his associates who contemplated organizing a joint stock company for owning the same, and laying it out into a city. That the association was organized the same day by Tinsley, Brady and one William Brady, who chose the name of the New Houston City Company, and resolved to have a capital stock of $1,000,000, and to issue certificates therefor in shares of $100 each; that they issued certificates for the said capital, and that the complainants for a valuable consideration received a certificate for 100 shares of the stock, which were expressed to be convertible at the option of the owner into New Houston city lots, at their assessed value upon the books of the company, and transferable only on the books upon surrender of the certificate; that by virtue of this certificate the complainants became beneficially interested as stockholders in the company, and in all its property, particularly the said lands; that stock was thus issued to many parties in England, New York, Texas and elsewhere, many of whom were unknown to the complainants; that the company took possession

by their trustee and directors and remained in possession of the lands until February, 1869, when they were sold by the sheriff of Harris county under a judgment on the purchase notes before mentioned, and purchased by the Young Men's Mutual Real Estate and Building Association; that the said suit was brought to foreclose the lien as well as to recover on the notes, but that no one but John T. Brady, the maker of the notes, and original vendee, was made a party to the suit—no officer, director or stockholder of the company being made a party, although the plaintiffs knew that the company had purchased the property, and was, by its trustees, officers and tenants in possession thereof; that the Young Men's Association took possession of, and now hold the property, and have ever since received the rents and profits thereof to an amount greater than the debt due, and that the trustee for the stockholders of the New Houston City Company has resigned or been displaced, so that they have no one to represent them. They therefore pray that they and the other stockholders may be permitted to redeem the lands by the Young Men's Association, accounting for the issues and profits received, and the complainants being allowed to pay the balance of the debt, if any remains.

The defendants set up three grounds of defense: First. That the deed to Brady of April, 1866, by reserving the vendor's lien, conveyed only an imperfect title to him, which was determined by his failure to pay the notes; whereby the vendors or their assigns, the holders of the lien, became entitled to the immediate possession of the property, by virtue of the superior and only legal title remaining in them. Second. That the deed from Brady to Hamblin was never properly recorded, and that the vendors and holders of the notes had no notice of it; and, therefore, were not bound to make the trustee or company parties to the suit brought on the notes. Third. That the complainants, being mere stockholders of the New Houston City Company, have no legal interest or equity of redemption which entitles them to redeem the property.

1. The first point, after considerable examination and reflection, I think is not tenable. It assumes that the vendor's lien in Texas is something superior to, and different from, the ordinary lien of a mortgagee, holding a mortgage given for the purchase money of the property mortgaged. A careful examination of the cases cited for this purpose, I think shows that this is not so. The mortgage, at common law, transferred the legal estate to the mortgagee, who could at any time take possession of the property, and hold it until his debt was paid and the land was redeemed. He could turn the mortgagor out of possession by an action of ejectment. 2 Story, Eq. Jur. § 1017. Nevertheless equity gives the mortgagor a right of redemption, which cannot be taken away from him by any thing

short of judicial process, or a release from himself, or great lapse of time in demanding his rights. In many of the American states this right of the mortgagee, by virtue of his legal estate, to take immediate possession, is modified it is true; and in nearly all of them the interest or equity of redemption of the mortgagor is regarded as a legal estate, and has all the incidents of a legal estate, though subordinate to the rights of the mortgagee, for the purpose of collecting the mortgage debt. But in all the states, a mortgagee in possession, after the debt is due, cannot be ousted by the mortgagor without redemption of the property by paying the debt. Now, in Texas, I understand the law to be precisely the same. The reservation of the vendor's lien in the deed of conveyance is equal to a mortgage taken for the purchase money, cotemporaneously with the deed, and nothing more. The purchaser has the equity of redemption precisely as if he had received a deed and given a mortgage for the purchase money. If the debt becomes due and he fails to pay it, the vendor may, by the peculiar forms of action which exist in Texas, either recover the land, as on a strict foreclosure, or procure it to be sold at public sale to make the debt. In both cases the mortgagor has an opportunity at any time before judgment, and, in case of sale, probably at any time before sale, to pay the debt, and relieve the land from the incumbrance; in other words, he has a right to redeem. And if the original purchaser has sold the land to a third person, and the deed has been duly recorded, or made known to the original vendor holding vendor's lien, the latter cannot turn such third person out of possession or extinguish his rights without legal process. No case can be found, I think, in the Texas reports which would sanction such a doctrine. The rights of the vendee being the same as those of a mortgagor, they must be extinguished in the same way. They are vested and well defined in the law. They constitute an estate called, it is true, by the name of an equity of redemption; but still an estate which may be conveyed, incumbered and laid under other liens. And the heirs and assigns of the vendee and subsequent holders of liens on the property against him cannot be disregarded or ignored by the original vendor or his assigns, when they desire to extinguish this estate.

The cases principally relied on to show a contrary doctrine, are Dunlap v. Wright, 11 Tex. 597; Webb v. Maxan, Id. 678; Baker v. Ramey, 27 Tex. 52; and Caldwell v. Fraim, 32 Tex. 310. In the first case there was a mortgage for purchase money, and the vendor was in possession after the vendee was in default, and remained in possession many years, until the mortgage debt became outlawed. The vendee then sued for the land without offering to redeem. It is hardly possible to imagine how a doubt should have been raised in such a case.

Though the personal debt, on the paper which represented it, may have been outlawed, for the purpose of a personal action, the claim of possession by the vendor as security for the debt was not outlawed. It was continuous. The legal title and the possession were both in the vendor. The vendee set up no equity to counteract these. How was it possible for him to recover? In Webb v. Maxan, the latter had purchased the equity of redemption, but this purchase was unknown to the original vendors who obtained a decree to enforce their lien. Maxan filed a petition for an injunction. The district court granted it, and allowed him to redeem. The supreme court reversed the decree. They say: "It is supposed that the judge arrived at this conclusion because Maxan was not made a party to the suit for the foreclosure of the mortgage, and it is admitted that as a subsequent incumbrancer, he ought to have been made a party, if the fact of his being such incumbrancer was known to the mortgagee. There is, however, nothing in the record to show that the mortgagee, at the time of the commencement of the suit to foreclose his mortgage, knew of this subsequent incumbrance; and there is no evidence that the mortgagor had left the possession of the mortgaged premises; and the inference is fair that he was in possession when the suit was brought." It seems to me that this is a clear statement of the law exactly as I have supposed it to be. In Baker v. Ramey, the court held that the vendor's lien remained good although the notes given for the purchase were barred by the statute of limitations. This has been frequently held in other states. In New Jersey, many years since, it was solemnly decided, and has always been regarded as good law, that ejectment on the mortgage could be brought by the mortgagee at any time within twenty years (the time of limitation as to real actions), although the mortgage debt was barred. In Texas, where all actions and suits are the same in form, the mortgagee would properly be entitled to recover the land in like manner, notwithstanding the bar had accrued as to the debt. This peculiar feature of the law of procedure in Texas is happily explained by Judge Lindsay in the last of the cases relied on, Caldwell v. Fraim. In that case the court state the general effect of a reservation of the vendor's lien. They say: "Under our system of jurisprudence, the vendor occupies the double position of vendor and mortgagee." Again, "The perfect title under our law is the consolidation of the legal and equitable titles, which our courts may accomplish on the trial of any case if the proper parties are before them." Again, "If a mortgagee, who has an interest in land for the security of a debt, is in possession of the mortgaged premises, the mortgagor cannot recover from him that possession until the debt secured by the mortgage has been paid

or extinguished by the rents and profits." Again, "Till the legal and equitable titles are consolidated in the vendee, he has no cause of action against his vendor for the possession; for, in this suit for the possession, the title has to be tried, and the equity remains in full force as long as there is an unpaid residue of the purchase money." In all this, I see nothing at variance with the long and well understood relations between mortgagor and mortgagee. If the court means to say, that the mortgagor, as between him and the vendor, is not legally entitled to the possession of the land even before the mortgage debt has matured, they only adopt the olden views of the mortgagee's rights. If they are referring to the relations which exist after the debt has matured, they state the more modern doctrine. But in nothing do they disaffirm the views before expressed as to the essential nature of the equity of redemption, its assignability, and the necessity of legal process against those notoriously interested in it before it can be barred or foreclosed.

2. We come then to the second ground of defense; that the deed from Brady to Hamblin was not properly recorded, and was not known to the parties holding the purchase notes when their suit was instituted. It is admitted that the deed was not recorded in the registry or record book of deeds, where it should have been. The attorney of Gardner, Bacon & Co., to whom some of the purchase notes had been indorsed, and who instituted the suit for the recovery thereof, when about to commence proceedings, was informed by Hamblin that such a deed had been given, and was recorded; but both he and Hamblin, having searched for it, were unable to find it. The fact is, it had been recorded, by mistake, in a separate book kept for the registry of mortgages. I have not been referred to, and have not been able to find in the Texas registry laws any direction to record deeds and mortgages in separate sets of books. But there is a manifest propriety in doing so. and it is the general practice throughout the country. That practice seems to have been adopted in Harris county, if not generally in this state. I am inclined to hold, therefore, that the recording of a deed in the registry of mortgages was an irregular registry of the deed as such, and imposed no legal or constructive notice of the deed upon third persons. No one can reasonably be expected to search for deeds in the record of mortgages. It cannot be a legal duty binding on those to be affected by the registry. The registry of a deed given by a person before acquiring title to the lands (who afterwards acquires title), not being in the regular order and chain of title, has been held not binding on subsequent purchasers and incumbrancers; because they are not expected to search for deeds in such person's name before he acquires title. On the same principle it may be very plausibly contended that the registry of the trust deed in this case, in the book of mortgages, was void. But the holders of the notes secured by the vendor's lien were just as much bound to make the trustee a party to the suit for foreclosure if they had notice of the deed in any other way, as if it had been recorded. Actual notice is quite as effective as constructive notice. This, indeed, is conceded. But the defendants deny that they had actual notice. Much evidence has been taken on this point; but it is unnecessary for me to advert to it in detail. The circumstance already adverted to, that the attorney of the mortgagees was directly and positively informed by the original trustee, before instituting suit, that such a deed had been given, together with the fact sworn to by the trustee and his successor, Turner, that they were put into possession as such trustees, and that the New Houston City Company under them, by its officers, agents and tenants, actually possessed, occupied, used and improved the land during the years 1867 and 1868, furnish such strong evidence of notice, that I am forced to conclude that the parties had notice of deed. The circumstances operating to the contrary, such as the want of success in finding the deed on record, and the fact that the Bradys, representing the company in the management of the land, might as well have been taken to have represented the original purchaser, John T. Brady, are not sufficient, in my view, to overcome the strong presumption of notice arising from the facts of the case, and the verbal notice actually given to the attorney. It is clear that the company, by its trustees, officers and tenants, were in actual possession of the tract, and made considerable improvements upon it; and possession is implied notice of title; that is, it imposes upon third parties interested to know it, the duty of inquiry to ascertain the particular title by which the possession is claimed. I hold, therefore, that the mortgagees had sufficient notice of the trust deed to put them upon due inquiry of the proper persons as to its contents, notwithstanding it was not recorded; and that they are to be presumed as having full knowledge of it.

3. But, lastly, the defendants insist, that even if this be so, the complainants in this case are not proper parties to bring suit to redeem the property in question; that if the mortgagees failed to make sufficient parties to their suit for foreclosure, the party lacking in that suit was not these complainants, but was the trustee under the trust deed, who, at the time of bringing suit on the notes, was N. P. Turner, the successor of Hamblin in the trust; and that he was aware of the suit and could have redeemed the property at that time by paying the debt; at all events, that the complainants are mere stockholders of the New Houston City Company, and not even officers thereof; and have no such interest in the equity of re-

demption as to entitle them to file a bill for redemption. It is true that Turner was trustee at the time referred to, and that he could, if supplied with funds, have redeemed the property. But that is not material. He was not made a party to the suit. Had he been made such party, the company and its stockholders (it was a joint stock company and not a corporation) would or might have been put on their guard; and would or might have provided him with means to pay the debt. The failure to make him a party, knowing, as I have supposed the mortgagees are bound to know, the interest he had in the lands, left that interest unforeclosed. He, or those whom he represented, are still entitled to redeem the land by paying the debt. This would clearly be the case anywhere else except in Texas; and I think I have shown that the law of Texas is not, in substance, different in this respect from that of other states.

But the question still remains, are the complainants the proper parties to file a bill for redemption? The proper person to file such a bill would be the trustee. The original trustee, to whom the trust deed was made, was Hamblin. He resigned in 1867, in consequence of some difficulty with the officers of the company, and a new trustee, Turner, was appointed in his place by the directors, in pursuance of the provisions contained in the deed. Turner accepted the trust and proceeded in the execution thereof, and, as before stated, was trustee when the suit was instituted on the purchase notes. But, as he was president of the Young Men's Mutual Real Estate and Building Association when that association purchased the land at the sheriff's sale, the New Houston City Company deemed him an improper person to represent it any longer as its trustee, and the directors of the company revoked his powers as such in March, 1870, but appointed no other person in his place. It is obvious that he would occupy a very anomalous and contradictory position, if he were required to represent the New Houston City Company. Even if his powers had not been revoked, the latter company would hardly have been guilty of any irregularity in filing a bill on its own behalf, and making him a defendant. They could, undoubtedly, have done this upon alleging his complicity with the defendants or his refusal to proceed. But as his powers have been revoked, and as there is now no trustee to represent the New Houston City Company, it seems to be almost a necessity, that the stockholders of the company (who are really tenants in common in the trust estate) should be permitted to sue on their own behalf. Without this, there would be a failure of justice. It is true, the directors of the company have the power to appoint a new trustee. But if they fail to do this, the stockholders should not be precluded from pursuing the rights to which they are equitably entitled.

I am, therefore, of opinion that the present suit will lie. The decree must be that the complainants be permitted to redeem the property by paying the entire debt, interest and costs, within thirty days after the passing of the final decree in the case; that in the meantime it be referred to a special master to take and state as well an account of the rents and profits received by the defendants, as of the whole amount due for principal, interest and costs on the original purchase notes, or the judgment recovered thereon in the district court for Harris county; and that he have leave to use the evidence already taken, or to take additional evidence; and to examine the parties, their books of account, etc.; and that the amount to be ultimately paid by the complainants shall be the balance that may remain unpaid after deducting the said rents and profits from the amount of said debt, interest and costs; but if the balance should be on the other side, that the defendants shall pay the same to the complainants; and that the defendants upon such payment being fully made, do convey the premises in question to the complainants, by a good and sufficient deed in that behalf, free and clear of any incumbrances made or suffered by them.