# THE
# TEXAS LAW REPORTER

## AUSTIN, TEXAS, JUNE, [No. 2.] 1884.

### JOHN C. GIBBONS, ET AL., v. M. G. EWER, ET AL.

IN THE SUPREME COURT OF TEXAS, AUSTIN TERM,1884.

In every exchange of lands there is implied both a condition of re-entry and a warranty; and if one party is evicted from the land conveyed to him, he may either re-enter upon his own land or recover on his warranty.

A grantor in a contract for exchange of land may disregard the deed of convey-ance he may have made, where he has never obtained the contemplated equivolent by acquiring title or possession for the land to which he was entitled, or where the other party has abandoned the contract.

Appeal from Lamar county.

This is an action of trespass to try title, brought by appellees, M. G. Ewer, et al., as heirs of Lemuel Ewer, deceased, to recover of appellants, John C. Gibbons, et al., the heirs and administrator of the estate of Epps Gibbons, deceased, 320 acres of land in Lamar county.

Plaintiffs pray for judgment recovering the land, for possession, and that all clouds be removed from their title, and petition is en-dorsed in the usual form as an action of trespass to try title.

Defendants below plead "not guilty," statutes of limitation of three, five and ten years, and, by special plea, set up that defendants and Epps Gibbons, under whom they claim to have had quiet, peace-able and uninterrupted possession of the premises for more than thirty years before this suit, holding under a deed executed by Lemuel Ewer (plaintiffs' ancestor), by his agent and attorney, in fact John L. Moore to Epps Gibbons ; that John L. Moore made the

deed to Gibbons as agent for said Ewes, acting under his instruc-
tions and under a valid power of attorney ; that Gibbons paid a full,
fair and adequate consideration for the property, took possession of
the same immediately after his purchase, placed his deed upon rec-
ord, made valuable improvements worth $1000, with the full knowl-
edge and consent of Ewer, said Ewer fully understanding all the
circumstances, ratified the sale and fully acquiesced in it for a num-
ber of years, and in fact as long as he lived ; that plaintiffs have
never set up claim to the property until this suit was brought, (June
14, 1880), although they knew the deed had been executed under
said power of attorney, and that the title had passed out of plain-
tiffs' ancestor for more than thirty years, and that their claim is a
stale demand, etc.

The cause was tried without a jury, May 19, 1882, with judgment
in favor of plaintiffs, M. G. Ewer, et al., for the recovery of the land,
that they be quieted in their title, for a writ of possession, costs, etc.

Defendants filed their motion for a new trial, May 20, 1882, which
was overruled the same day, and defendants gave notice in open
court of oppeal to the supreme court, filed their appeal bond and
assignment of errors, and bring the cause up by appeal.

OPINION.

The merits of this suit turns upon the question whether the deed
of conveyance, relied on by the appellants, to the land in contro-
versy, from Lemuel Ewer, plaintiffs ancestor, made by John L.
Moore, acting as agent for him under a certain power of attorney,
was intended to pass the title to the land *in presenti* and absolutely
or whether it constituted and evidenced but a portion of an entire
contract which was of an executory character, the conclusiveness
and finality of which deed, as a conveyance of title, under said con-
tract, being dedendent upon the consumation of the contract con-
sidered as an entirety.

The defense set up against the deed was, that although it was ab-
solute and unqualified in form as an apparent assurance of title, it
was, in fact and in legal effect, an instrument of writing intended
to perform the office of conveying the land described in it in consid-
eration of the exchange of tracts of land between the grantor and
grantee, and that the latter, Epps Gibbons, on his part, in pursuance
of that agreement, and as a part thereof had made and delivered to

Lemuel Ewer, the grantor in the deed, his bond for title stipulating to convey to him two specified tracts of land embracing a like quantity as that included in the deed, as soon as he, said Epps Gibbons, could obtain a patent for said land from the government, and binding himself to use due diligence to procure the patent; that said Gibbons had failed to comply with the terms of his bond, and that the contract had been abandoned.

The deed and bond were executed and delivered on September 24, 1845. The former was witnessed by B. K. Clark; the latter by said Clark and one L. V. Moore.

The judge trying the case, among his other findings, found that the deed was executed and delivered by one Moore, acting under a power of attorney from Lemuel Ewer, which deed was never ratified nor acquiesced in by said Ewer; that the consideration of the deed was a bond for title, such as is above described.

The court also found that the transaction between the parties was for a barter or exchange of lands; that Epps Gibbons was in possession of the land at the date of the deed, and so continued until the year 1852, when his improvements being partially destroyed, he removed from the land and disposed of the remaining improvements; that when said Gibbons removed from the land, the barter of lands between him and Ewer was considered abandoned by both parties; that Lemuel Ewer rendered and paid taxes on the land in controversy from date of patent, July 8, 1345, until his death, in 1860, since which time they have been paid by his heirs; that neither Epps Gibbons nor his heirs have ever paid any taxes on the land until this suit was brought, June 14, 1880; that since the abandonment of the possession of the premises in controversy by Epps Gibbons, in 1852, no one has had possession until within twelve months before the bringing of this suit, when defendants took possession of the same.

Upon these and other findings of facts, the court found, as a de-duction of law, that plaintiffs are entitled to a judgment for the land in controversy and for their costs.

The power of attorney above referred to contained a provisional authority merely for the sale of property by the attorney in fact. The third clause was to the following effect, viz: "To make sale of all or a portion of my property, if directed by me or my lawful

heirs by letters to that effect, and generally to do whatever my said attorney may think best to promote my interest."

The power being in itself insufficient to authorize the attorney to sell or convey unless under the prescribed conditions, and no authority under such having been shown, the defendants relied upon showing by evidence a ratification and adoption by Ewer of the deed of conveyance made by Moore under said power.

Undoubtedly, under a state of facts which warrant the application of the rule, that the power to execute a deed will in many cases be presumed, and consequently in such case it might well be presumed under such a power of attorney as this one was, that the constituents had given by letter the directions necessary to authorize the making of the conveyance. (See Watrous v. McGrew, 16 Texas, 513, and authorities there cited; Daily v. Starr, 26 Texas, 556; 2 Cow. & Hill's notes to Phil. on Ev., pp. 812, 813; McDow v. Rabb, 56 Texas, 159.)

In the class of cases to which the rule is applied, the attendant facts must be such as, in the instance of long continued possession and acquiescence under ancient deeds, harmonize with and are consistent with the rational supposition of the existence of the fact which is sought to be presumed, the 'proof of which has probably been lost, or the evidence of which has become obscure from lapse of time.

The power of attorney contains a clause giving power to the attorney "to sign, seal and deliver all kinds of bonds, notes and other instruments of writing." The third clause of that instrument above quoted must, we think, be held clearly to restrict the agent's power so far as deeds or other written contracts to convey land is concerned, to the condition prescribed by it, notwithstanding the authority given in the clause last above quoted; and the power to sell or convey the constituent's land would not be included in the term "other instruments of writing."

The defendant introduced evidence of a circumstantial character tending to show that Lemuel Ewer had written a letter to Moore, his attorney in fact, authorizing him to make an exchange of lands with the defendants' ancestor, Epps Gibbons, and that the deed made by him to the latter had been executed in pursuance of that direction thus given. The evidence referred to was the following extract from Moore's letter to Lemuel Ewer, viz:

"LAMAR Co., TEX., Nov. 14, 1845.

"*Father Ewer, Sir:*—I embrace this opportunity of answering yours of the 10th of Aug. last, and I will just say to you, this is the first letter I have attempted to write you, and I will give you my reasons for it, 1st, Col. Harmon promised you, from your letters to me from Shreveport, to make the plat out in a short time, and he failed to do so until the middle of summer.

"Old Father Gibbons and I have settled the land matter as you desired it. I have his bond for title to 300 acres of land adjoining yours on the east, and the 20 acres of timbered land to be in three miles of the land on the prairie."

On the back of the letter was a plat, made by Hamon, the county surveyor, of the 640 acres of which the land in controversy is a part; also the surrounding surveys and another 640 acre survey patented in the name of Lemuel Ewer about five miles from this. The bond' for title was read from Epps Gibbons to Lemuel Ewer for 320 acres in Lamar county, lying east of the Ewer survey, dated September 24, 1845, conditioned to make title as soon as patent could be obtained from the State.

Defendant's then proved that Lemuel Ewer lived in Lamar county up to 1855; that early in that year he went to Massachusetts, leaving John L. Moore his agent, who looked after his business; that Ewer returned to Lamar county about Nov., 1846, and remained there, living in a few miles of Epps Gibbons until the summer or fall of 1848, when he returned to Massachusetts, where he died in 1861.

Plaintiffs, in rebuttal, proved by M. G. Ewer, one of the plaintiffs, that the title bond offered in evidence was given to witness by John L. Moore, with a bundle of old letters, about 1846 ; that Lemuel Ewer and his agents paid taxes on the land from 1849 to the date of his death, and witness has paid taxes ever since for himself and co-heirs, who claimed the land ; that Ed. and John, sons of Epps Gibbons, had lived in Lamar county since 1845 ; that Epps Gibbons' will was probated in 1857 ; that Ed. Gibbons was his executor and did not inventory this land as a part of the estate until a short time before this suit, when he filed an additional inventory.

The deed from Ewer, by his agent Moore, to Epps Gibbons expresses on its face the payment in full of the purchase money, "five hundred dollars to me in hand paid." The covenants in this deed are as follows : "And the said Ewer binds himself to warrant and

forever defend the title of the above described tract of land to the said Gibbons and to his said heirs."

There is no evidence connecting this deed with the bond, otherwise than has been stated.

Upon this state of case, it is apparent, first, that no such facts exist as warrant the application of the rule for presuming that the deed was executed under a valid and sufficient power upon the principles and conditions declared in the authorities which have been heretofore cited, even though the facts which tend to rebut the existence of such authority were not in evidence.

There is a want of the circumstances of long possession, cultivation and use, accompanied by continued acquiesence on the other side, as iu McDow v. Rabb, 56 Texas, 158, or of such circumstantial evidence of the former existence of due and ample authority traced back to a distant remote period, under which, after such lapse of time it was allowed to be presumed the conveyance was made, as in Watrous v. McGrew, 16 Texas, 513; Daily v. Starr, 26 Texas, 566.

Second. The evidence offered by the defendant to show the existence of the authority to convey the land discloses the fact that the transaction effected through Moore, the agent, resulting in the contemporaneous execution of the deed to Epps Gibbons and the bond for title to Lemuel Ewer was done in pursuance of an agreement to exchange lands between Ewer and Gibbons. Moore's letter to Ewer showed, if it can be said to prove anything with reasonable certainty, that Moore had received Ewer's directions in regard to the transaction concerning which Moore wrote to him, and his letter and accompanying plots, together with the bond for title and the deed, were all consistent with the supposition that the transaction was, in fact, an exchange of lands, yet those facts, if thus suggestive, are by no means conclusive that the instruments thus executed were intended to evidence such exchange of lands, or that they were reciprocally or mutually dependent on each other. Whether they were so in fact or not was, however, an essential and proper subject of judicial inquiry and determination, and the acts of the parties to them in relation to the subject matter of those instruments of writing afforded proper evidence to be considered and weighed in order to arrive at a correct conclusion concerning the intention of the parties to be affected by them.

The evidence showed, without contradiction, that Lemuel Ewer

and his heirs recognized the land in controversy as their property, and asserted that claim of right and title by the payment of taxes upon it, without intermission from the time of the transaction onwards. On the other hand, Epps Gibbons and his heirs did not pay taxes upon the land until this suit was brought in the year 1880, according to the finding of the court. It does not appear from the statement of facts, at any rate, that they did so pay the taxes.

The executor of the will of Epps Gibbons, probated in 1857, did not place this land on the inventory of the estate until shortly before the institution of this suit. Payment of taxes, or the pretermission of lands from the assessment for and payment of taxes are often circumstances tending to show claim or non-claim of the property. In Daily v. Starr *supra*, consideration seems to have been given by the court to the fact that in connection with visible and notorious acts of ownership over the land, the claimants of it had, during the period in question, paid the taxes thereon. The claim of title thus made by the plaintiffs, and the acts of non-claim above indicated by the evidence on the part of the defendants and their ancestors, was evidence which well might have influenced the conclusion of the court that the parties to the original transaction understood it alike; and that both instruments were intended to evidence a contract for the exchange of lands; and that it was subsequently abandoned by the parties to it.

If said instruments were executed contemporaneously for such purpose, they are to be deemed and construed as one instrument. (Dunlap v. Wright, 11 Texas, 597.) The legal effect of which would be, as between the parties and their privies, to entitle the grantor in the deed to maintain against the grantee and his heirs the superior equitable title to the land, and to enforce a reconveyance of the legal title in case of the default of the grantee to comply with his obligation to convey the land which he had stipulated to convey, or whenever he should see proper to abandon the contract thus made, to exchange lands. (See Ross v. Armstrong, 25 Texas, supp. 369.)

The contract, as an entirety, being executory and partly performed by the compliance by one of the parties with the terms on general principles of equity, and the plain dictates of right, the other party failing, on his part, to comply by making a conveyance of the land agreed to be conveyed, or wholly abandoning the contract, will not be permitted to retain the advantage acquired by having been

invested with the legal title to the other party's land. "In Bustard's case (4 Coke, 121) it was adjudged that in every exchange of lands there is implied both a condition of re-entry and a warranty; and if one party is evicted from the land conveyed to him, he may either re-enter upon his own land or recover upon his warranty." (Ross v. Armstrong *supra*.) *A fortiori*, may a grantor in such contract for exchange disregard the deed of conveyance he may have made, where he has never obtained the contemplated equivolent by acquiring the semblance even of title or of possession for the land to which he was entitled, or where the other party has abandoned the contract.

The conclusions of the court upon the evidence is well supported, and is entitled to the same consideration as would be the finding of a jury, and we perceive no sufficient reason for disturbing the special findings, either of fact or law.

The judgment, therefore, ought to be affirmed.

Opinion by Walker, J.

Report of Commissioners of Appeals examined, their opinion adopted, and the judgment affirmed. Stayton, J.